UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| DOLWIN CORMIA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:23-CV-291-JEM |
| SGT. CRABTREE and SGT. MOORE, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

Plaintiff, a prisoner of the Tennessee Department of Correction ("TDOC"), filed this pro se action for violation of 42 U.S.C. § 1983 that proceeded only as to Plaintiff's claims that on June 7, 2023, Defendants used excessive force against him while he was restrained [Doc. 12 pp. 7–43]. Now before the Court are (1) Plaintiff's motions to appoint counsel [Docs. 56, 60]; (2) Plaintiff's motion for a form that will allow his friends and family to pay the balance of the filing fee for this action [Doc. 61]; (3) the parties' discovery motions [Docs. 62–67]; and (4) Defendants Moore's and Crabtree's motions for summary judgment asserting that Plaintiff failed to exhaust his available administrative remedies prior to filing this action [Docs. 26, 41].

I.  APPOINTMENT OF COUNSEL

In his first motion to appoint counsel, Plaintiff states in relevant part that (1) "[he] is unable to afford counsel [and] has requeste[d] leave to proceed *in forma pauperis*"; (2) "[his] imprisonment will greatly limit his ability to litigate"; (3) "[he] is in administrative segregation on twenty-three hour lockdown, with limited access to the law library and its materials"; (4) "it takes a minimum of two weeks to request and receive materials from the law/legal library"; (5) "[t]he issues involved in this case are complex[] and will require significant time, research, and

investigation"; (6) "[he] has very limited access to the law library and limited knowledge of the law"; (7) "[a] trial in this case will likely involve conflicting testimony, and counsel would better enable Plaintiff to present evidence and cross examine witnesses"; and (8) "Plaintiff has made repeated efforts to obtain a lawyer by writing and by family members, without response or success" [Doc. 56 pp. 1–2].

Plaintiff then filed a second motion requesting appointment of counsel that is substantively similar to his first [Doc. 60]. Plaintiff, however, adds allegations that although a prison policy allows inmates to check out books, when he requests materials and books from the law library, he receives pages from the book rather than the whole book, and the copies of the pages are not of the full page [*Id.* at 2]. To support these allegations, Plaintiff filed exhibits, including a prison form indicating books may be checked out and a copy of a page from a book that cut off a letter or two in one of the paragraphs on the page [Doc. 60-1]. Also in his second motion for appointment of counsel, Plaintiff (1) states that counsel would help him locate former employees and (2) names the lawyers he has contacted [Doc. 60 p. 2].

Appointment of counsel in a civil proceeding is not a constitutional right, but a privilege justified only in exceptional circumstances. *Lavado v. Keohane*, 992 F. 2d 601, 605–06 (6th Cir. 1993). A district court has discretion to determine whether to appoint counsel for an indigent plaintiff. *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992). In exercising that discretion, the district court should consider the nature of the case, whether the issues are legally or factually complex, and the plaintiff's ability to present his claims. *Lavado*, 992 F.2d at 605–06.

As to the first two factors, as set forth above, this action is proceeding only as Plaintiff's excessive force claims, which are routine claims that are not factually or legally complex. Plaintiff's allegations regarding the conditions of his incarceration, self-representation, and lack

of an attorney are typical of prisoner plaintiffs. As to the third factor, it is apparent from his filings that Plaintiff can adequately present his claims. Moreover, while Plaintiff alleges he has had difficulty obtaining specific legal materials, the Court does not infer that this has caused him any problems in this proceeding.

Thus, Plaintiff has not established that this is an exceptional case where he is entitled to appointment of counsel, and his motions for appointment of counsel [Docs. 56, 60] are **DENIED**.

## II. FORM REQUEST

Plaintiff filed a motion requesting that the Court provide him with a form, application, or methods that will allow his friends and family to pay the balance of his filing fee [Doc. 61]. This motion [**Doc. 61**] is **GRANTED** to the extent that the Clerk is **DIRECTED** to send a copy of this memorandum and order to the Court's financial officer, who is **DIRECTED** to send Plaintiff (1) the balance of his filing fee for this action and (2) any guidance that may exist as to how Plaintiff's friends and family may pay that balance, including any form that may exist.

## III. DISCOVERY MOTIONS

More than five months after Plaintiff filed his last response to a pending motion for summary judgment [Doc. 54], Plaintiff filed numerous documents with the Court through which he appears to seek discovery from Defendants [Docs. 62–66]. Defendants filed a motion [Doc. 67] and memorandum [Doc. 67-1] opposing these filings. In their memorandum, Defendants assert that Plaintiff's discovery filings with the Court are inappropriate before requesting that the Court dismiss Plaintiff's discovery requests and suspend the current discovery deadline until after the Court rules on their pending motions for summary judgment or, in the alternative, extend their time to respond to these discovery motions [Doc. 67-1 pp. 1–5].

Initially, it appears likely that Plaintiff filed these discovery documents [Docs. 62–66] with the Court for the purpose of serving them on Defendants as discovery requests. But this was improper, as the Court's Local Rule provides that parties may not file discovery documents with the Court except under certain circumstances that are not applicable here. *See* E.D. Tenn. L.R. 5.3.

To the extent that Plaintiff filed these discovery documents [*id.*] with the Court for the purpose of requesting that the Court compel Defendants to answer the discovery requests therein, this is also improper. Specifically, as Defendants correctly point out in their memorandum in support of their discovery motion [Doc. 67-1 pp. 2–3], Rule 37(a)(1) of the Federal Rules of Civil Procedure requires litigants seeking to compel discovery from an opposing party to file a certificate indicating that they conferred or attempt to confer with the opposing party about the discovery dispute prior to seeking relief from the Court regarding that dispute. Fed. R. Civ. P. 37(a)(1) (providing that a motion seeking to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action"). None of Plaintiff's discovery filings [Docs. 62–66] comply with this rule, as they do not contain the required certification.

It is also apparent from (1) the timing of Plaintiff's discovery filings [*id.*] and (2) the fact that none of Plaintiff's discovery filings [*id.*] appear to be aimed at obtaining discovery regarding Plaintiff's exhaustion of his administrative remedies that Plaintiff does not assert that he is entitled to obtain the requested discovery prior to the Court ruling on Defendants' pending motions seeking summary judgment [Docs. 26, 41]. But even if the Court could liberally construe Plaintiff's discovery filings [Docs. 62–66] to seek the discovery requested therein as part of the summary judgment process, Plaintiff has not demonstrated that he is entitled to the requested discovery prior to the Court ruling on the pending motions for summary judgment [Docs. 26, 41].

4

Specifically, where a party files a motion requesting to obtain discovery prior to the Court ruling on a summary judgment motion, the party must demonstrate the necessity of the requested discovery by "showing 'by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition' without discovery . . . [and] mere recitations of conclusory allegations are insufficient." *King v. Harwood*, 852 F.3d 568, 579 (6th Cir. 2017) (citations omitted). Plaintiff, however, has not filed any affidavit or declaration establishing that the requested discovery is necessary for him to establish his opposition to Defendants' motions for summary judgment. The Court also notes that Plaintiff has not shown that the requested discovery would change the result in this case. *Health & Wellness Lifestyle Clubs, LLC v. Raintree Golf, LLC*, 808 F. App'x 338, 346 (6th Cir. 2020) ("A district court does not abuse its discretion [by denying discovery in the face of a summary judgment motion] when, as here, granting a party's request for additional discovery 'would not have changed the ultimate result.'" (quoting *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1197 (6th Cir. 1995))).

Accordingly, Plaintiff's discovery motions [Docs. 62–66] are **DENIED**, and Defendants' discovery motion [Doc. 67] is **DENIED as moot**.

IV.  **SUMMARY JUDGMENT**

As set forth above, both Defendants have filed motions for summary judgment asserting that Plaintiff failed to exhaust his available administrative remedies prior to filing this action [Docs. 26, 41]. In support of his motion for summary judgment, Defendant Moore filed a declaration from Brandon Evans [Doc. 28-1], the relevant TDOC inmate grievance procedures [Docs. 28-2], the inmate grievance handbook [Doc. 28-3], a copy of Plaintiff's grievance history [Docs. 28-4], a memorandum [Doc. 27], and a statement of undisputed facts [Doc. 28]. In support of Defendant Crabtree's motion for summary judgment, he filed a declaration from Matthew

5

Harris [Doc. 49-1], the relevant TDOC inmate grievance procedures [Doc. 49-2], the inmate grievance handbook [Doc. 49-3], a copy of Plaintiff's grievance history [Doc. 49-4], a memorandum [Doc. 48], and a statement of undisputed facts [Doc. 49].

Plaintiff filed a response in opposition to Defendant Moore's motion for summary judgment [Doc. 36], to which he attached various exhibits including, among other things, declarations from Inmates Nicholas Jones and DeAngelo Moody [Docs. 36-2, 36-3] and copies of grievance documents related to grievances Plaintiff filed in September 2024 and June 2023 about incidents that are not related to the excessive force incident underlying this action [Doc. 36-4]. Plaintiff also filed unsworn documents setting forth his opposition to Defendant Moore's statement of undisputed facts [Docs. 37, 38], an unsworn copy of his grievance history [Doc. 39], and a declaration from Inmate Verico Jackson [Doc. 42]. Defendant Moore filed a reply [Doc. 43], and Plaintiff then filed an unsworn amended response [Doc. 44].

Plaintiff filed an unsworn response to Defendant Crabtree's motion for summary judgment [Doc. 54] and an unsworn statement of material undisputed facts [Doc. 55].

A.  **Standard of Review**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). To successfully oppose a motion for summary judgment, "the non-moving party . . . must present

sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010).

Failure to exhaust is an affirmative defense for which a defendant bears the burden of proof. *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012). Accordingly, when a defendant in a prisoner civil rights action moves for summary judgment on exhaustion grounds, he "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Id.* at 455–56 (citations and internal quotation marks omitted). Once a defendant has demonstrated that there was a generally available administrative remedy that the plaintiff did not exhaust, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (citation omitted); *see also Napier v. Laurel Cnty.*, 636 F.3d 218, 225–26 (6th Cir. 2011) (finding once defendants put forth evidence of a valid administrative process, the plaintiff must present evidence to rebut the availability of that remedy to defeat a motion for summary judgment).

B.  **Defendants' Proof**

Defendant Moore filed an affidavit from MCCX Grievance Chairperson Brandon Evans testifying in relevant part that although grievance forms are available to MCCX prisoners in each housing unit, Plaintiff did not file an appropriate grievance regarding Defendants' alleged uses of excessive force on June 7, 2023 [Doc. 28-1 pp. 3, 5]. Defendant Crabtree also filed an affidavit from MCCX Grievance Chairperson Matthew Byrd that also indicates, among other things, that grievance forms are available to MCCX prisoners in each housing unit, and Plaintiff did not file an appropriate grievance regarding Defendants' alleged uses of excessive force on June 7, 2023

7

[Doc. 49-1 p. 2, 4]. Chairperson Byrd also indicates in his affidavit that appropriate grievances are "assigned a TOMIS grievance number," and that Plaintiff did not file a grievance that received a TOMIS number between 2003 and July 24, 2023 [*Id.* at 4].

Both Defendants also filed a sworn copy of Plaintiff's grievance record [Doc. 28-4 p. 2; Doc. 49-4 pp. 2]. Plaintiff's most recent grievance record, which Defendant Crabtree filed in support of his motion for summary judgment, indicates that Plaintiff did not file any grievance that was assigned a TOMIS number after 2003 until January 21, 2025, and that Plaintiff's January 2025 grievance addressed "Unit Management" [Doc. 49-4 p. 2]. This is consistent with Defendant Moore's copy of Plaintiff's grievance record, which Defendant Moore filed prior to January 2025, as that grievance record indicates that Plaintiff had not filed a grievance that received a TOMIS number after 2003 [Doc. 28-4 p. 2].

Both Defendants also filed sworn copies of the TDOC grievance policies and procedures and inmate handbook [Docs. 28-2, 28-3, 49-2, 49-3].[1] The TDOC developed a formal grievance procedure that is set forth in TDOC policy 501.01 and explained in the TDOC Inmate Grievance Procedures Handbook [Doc. 28-2 pp. 3–4]. Under the applicable grievance policy, a "grievance" is defined as "a written complaint concerning the substance or application of a written or unwritten policy or practice, any single behavior or action toward an inmate by staff or other inmates, or any condition or incident within the Department or institution which personally affects the inmate" [*Id.* at 3]. Grievance forms are available in each housing unit and are given to any inmate upon request [*Id.* at 4]. Forms are collected daily from locked depositories on each unit [Doc. 28-3 p. 6]. Inmates are entitled to assistance from an advocate representative to prepare and file a grievance or appeal [*Id.* at 7].

---

[1] As these documents appear to be identical, the Court will refer only to the grievance policies and procedures Defendant Moore filed, for purposes of efficiency.

An inmate initiates the general grievance process by submitting a written grievance form within 7 days of the complained-of incident, but an inmate may file a Title VI grievance up to 180 days after the incident [Doc. 28-2 pp. 4, 7; Doc. 28-3 p. 8]. The grievance chairperson logs all appropriate grievances as received [Doc. 28-2 p. 4]. But grievances that are improperly completed or contain insufficient information "shall be returned to the inmate with instructions as to proper completion [] . . . [and] should not be logged as received . . . until the corrected version is received" [*Id.*]. The policy specifies that the grievance chairperson should not log an improper grievance as received because doing so would trigger the start of certain time deadlines for resolution of the grievance [*Id.*].

If the grievance chairperson deems a grievance "inappropriate to the grievance process, an abuse of procedure, or non-grievable at Level I," then the inmate may appeal that finding [Doc. 28-3 p. 9]. When an inmate appeals such a finding, copies of the relevant grievance are forwarded to Level III, at which point the Assistant Commissioner of Prisons makes a final response within 25 days, which he forwards to the chairperson for processing, if the matter is grievable, or for return to the inmate, if the matter is not grievable [*Id.* at 9, 10]. If a time limit expires at any stage of the grievance process without the required response from prison officials, the inmate may move the grievance to the next stage of the process, unless the inmate agrees to an extension of the applicable time period in writing [Doc. 28-2 p. 5].

### C. Plaintiff's Allegations[2]

On July 24, 2023,[3] Plaintiff initiated this action by filing unsigned motions regarding deadlines, which the Court liberally construed to request that the Court (1) allow him additional time to file his complaint in this action while he exhausts the grievance procedure; (2) stay this proceeding while he exhausted the grievance procedure; and/or (3) require TDOC officials to respond to his grievance [Docs. 1, 2; Doc. 12 p. 2]. With these motions, Plaintiff filed an unsworn copy of a Title VI grievance that is also dated July 24, 2023 [Doc. 1-1 pp. 2–5].

Approximately a week later, on August 1, 2023, Plaintiff filed the operative complaint [Doc. 7]. In this unsworn complaint, Plaintiff alleges in relevant part that he filed a grievance regarding the incidents underlying his complaint but did not receive a response [*Id.* at 2–3].

With his unsworn complaint, Plaintiff filed unsworn documents showing that the July 24, 2023, Title VI grievance addressing the numerous June 7, 2023, incidents underlying his complaint that he filed with his earlier motions was returned to him on July 25, 2023, as inappropriate due to it being untimely and because it addressed multiple issues [Doc. 7-1 pp. 53–57]. The form returned to Plaintiff with the finding that the grievance was inappropriate indicated that Plaintiff could

---

[2] Plaintiff's operative complaint [Doc. 7] and the majority of his filings in response to Defendants' motions for summary judgment [Docs. 36, 36-1, 36-4, 37, 38, 39, 44, 54, 55] are unsworn. As such, the Court cannot consider these filings as proof for purposes of summary judgment. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (providing a sworn complaint "carries the same weight" as an affidavit for purposes of summary judgment); *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 968–69 (6th Cir. 1991) (providing that a court may not consider unsworn statements in evaluating a motion for summary judgment). Nevertheless, for purposes of clarity and to address Plaintiff's most substantial arguments on the issue of his exhaustion of his available administrative remedies, the Court will summarize and address the most relevant allegations of Plaintiff's unsworn filings.

[3] The Court considers the date on which Plaintiff signed these documents as the day on which he filed them. *See, e.g., Houston v. Lack*, 487 U.S. 266, 273 (1988) (providing that a prisoner's complaint is deemed "filed" when the prisoner submits it to prison officials for mailing); *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (noting that the signing date on a pro se prisoner's pleading is the filing date, unless there is evidence to the contrary).

appeal that response within seven days by checking the "yes" box, dating it, and placing both the grievance and the coversheet in the grievance box [*Id.* at 53]. This form also stated, "If you are still interested in filing this grievance, please make the necessary corrections and return to the Grievance Office for further processing immediately" [*Id.*].

Plaintiff also filed three sworn declarations from other inmates in support of his responses to Defendant Moore's motion for summary judgment [Docs. 36-2, 36-3, 42]. The first declaration from Inmate Nicholas Jones [Docs. 36-2] does not contain information relevant to whether Plaintiff exhausted his available administrative remedies prior to filing this action, which is the only issue before the Court for purposes for summary judgment. Accordingly, the Court will not summarize or otherwise address Mr. Jones's declaration.

In the second declaration Plaintiff filed in response to Defendant Moore's motion for summary judgment, Inmate DeAngelo Moody testifies in relevant part that he has "a direct line of sight to the grievance box" in MCCX Unit 24B from his cell [Doc. 36-3 p. 1]. According to Inmate Moody, MCCX Grievance Chairperson Cpl. Brandon Evans "does not retrieve grievances from the grievance box on a daily basis," and Inmate Moody "ha[s] witnessed the grievance box not be checked for two weeks" [*Id.* at 1–2]. Inmate Moody also claims that he filed other grievances while Cpl. Evans was Grievance Chairperson to which he did not receive a response and that "Grievance Chairperson [Cpl.] Evans does not follow the grievance rules, policies, or procedures in an effort to discourage inmates from filing grievances" at MCCX [*Id.* at 3].

Similarly, in the third declaration Plaintiff filed in opposition to Defendant Moore's motion for summary judgment, Inmate Verico Jackson testifies in relevant part that he has been a grievance clerk at MCCX since 2022 under Grievance Chairperson Cpl. Brandon Evans [Doc. 42 p. 1]. According to Inmate Jackson, Grievance Chairperson Cpl. Evans did not pick up grievances

11

from the boxes in the high security units on a daily basis and "has failed to login grievances, failed to give grievances a grievance number, or even respond to filed grievances, all in an effort to discourage inmate filings and complaints" [*Id.* at 1–2]. According to Inmate Jackson, this caused a backlog for the new grievance chairperson, Cpl. Byrd [*Id.* at 2].

### D. Analysis

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statute requires "proper exhaustion" of administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

To properly exhaust his claims, a prisoner must utilize every step of the prison's procedure for resolving his grievance and follow the "critical procedural rules" in a manner that allows prison officials to review and, where necessary, correct the issues set forth in the grievance "on the merits." *Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016) (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010)). "There is no uniform federal exhaustion standard [and] [a] prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citation omitted).

Defendants have set forth sworn proof that Plaintiff never filed a proper grievance regarding his claims proceeding herein [Doc. 28-1 pp. 3, 5; Doc. 49-1 pp. 2, 4; Doc. 28-4 p. 2; Doc. 49-4 p. 2], and Plaintiff has not set forth sufficient evidence from which any jury could reasonably find that Plaintiff filed an appropriate grievance regarding his claims herein, or that he failed to file such a grievance because the grievance process was unavailable to him. *Jones v. City*

*of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (finding that conclusory allegations "are not evidence, and are not sufficient to defeat [Defendants'] well-supported motion for summary judgment." (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (noting a "mere existence of scintilla of evidence" in support of non-moving party's position will not defeat a motion for summary judgment (citation omitted)). Thus, Defendants are entitled to summary judgment on this ground.

Plaintiff has set forth sworn declarations from Inmates Moody and Jackson alleging that Grievance Chairperson Evans failed to pick up grievances on unspecified days and failed to log unspecified grievances [Docs. 36-3, 42]. To the extent Plaintiff submits these to show there is a genuine issue of material fact as to (1) whether the grievance policy was available to him and/or (2) whether Plaintiff may have filed a grievance or appeal that Grievance Chairperson Cpl. Evans did not log or respond to, these declarations are too conclusory and general to create a genuine issue of material fact on these issues.

Specifically, while Inmate Moody states that he can see the grievance box in Unite 24B from his cell and that Grievance Chairperson Cpl. Evans did not empty the grievance box every day and sometimes did not do so for two weeks, Inmate Moody does not set forth any facts that would allow a reasonable jury to find that Grievance Chairperson Cpl. Evans (or any other prison official) could not have checked the grievance box without Inmate Moody seeing him (for example, during times that Inmate Moody was eating, using the restroom, or asleep), or that Grievance Chairperson Cpl. Evans (or any other prison official) failed to check the grievance box on any day that is relevant to this action [Doc. 36-3 pp. 1–2].

Similarly, while Inmate Jackson states that he worked as a grievance clerk and that Grievance Chairperson Cpl. Evans did not pick up grievances from the boxes in the high security

13

units on a daily basis and "failed to login grievances, failed to give grievances a grievance number, or even respond to filed grievances, all in an effort to discourage inmate filings and complaints," Inmate Jackson also does not provide any facts suggesting that he has personal knowledge that Grievance Chairperson Cpl. Evans failed to log, give a number to, or respond to any properly filed grievance or appeal from Plaintiff or any other inmate, or the dates on which these alleged omissions occurred [Doc. 42 pp. 1–2]. Nor does Inmate Jackson provide any facts to support a reasonable jury finding that he has personal knowledge that Grievance Chairperson Cpl. Evans's alleged actions regarding grievances were meant to discourage inmates from filing grievances [*Id.*].

Plaintiff also filed unsworn grievance documents indicating that he filed a Title VI grievance regarding the claims herein on July 24, 2023 [Doc. 7-1 pp. 53–57]. Even if the Court were to consider these despite that they are unsworn, they establish that on July 25, 2023, the grievance was returned to Plaintiff as inappropriate based on the finding that it was both untimely and addressed multiple issues [*Id.*]. It is apparent that Grievance Chairperson Cpl. Evans's rejection of the grievance as inappropriate because it addressed multiple issues was appropriate under the applicable grievance policy, as the Title VI grievance Plaintiff appears to have submitted on July 24, 2023, addressed numerous behaviors and/or actions [*id.*] and the applicable grievance policy defined a grievance as "a written complaint concerning the substance or application of a written or unwritten policy or practice, any **single** behavior or action toward an inmate by staff or other inmates, or any condition or incident within the Department or institution which personally affects the inmate" [Doc. 28-2 p. 3 (emphasis added)].[4]

---

[4] While it appears that the rejection of Plaintiff's July 24, 2023, Title VI grievance as untimely was inappropriate under the applicable grievance policy because Plaintiff filed it less than 180 days after the incident underlying the grievance occurred [*id.*; Doc. 28-2 pp. 4, 7;

14

Case 3:23-cv-00291-JEM   Document 70   Filed 09/15/25   Page 14 of 17   PageID #: 772

Plaintiff has not cited, nor has the Court located, any sworn evidence in the record that Plaintiff filed an appeal of the TDOC's July 25, 2023, rejection of his Title VI grievance as inappropriate, even though both the coversheet rejecting that grievance and the applicable grievance policy provided that he could have done so [*Id.* at 53; Doc. 28-3 p. 9]. This failure to appeal is fatal to Plaintiff's claims herein. *Liggett v. Mansfield*, No. 4:08-cv-86, 2009 WL 1392604, at *2–3 (E.D. Tenn. May 15, 2009) ("A prisoner who files a grievance but does not appeal to the highest possible administrative level, does not exhaust available administrative remedies." (citing *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999)).

Moreover, even if the Court assumes both that (1) Plaintiff filed an appeal of the finding that his Title VI grievance was inappropriate on July 25, 2023, which is the earliest date he could have done so, and (2) Plaintiff did not receive a response to this appeal [*see* Docs. 36-3; Doc. 42], it would still be apparent that Plaintiff filed this action prior to exhausting his available administrative remedies. Specifically, as set forth above, the documents Plaintiff filed regarding his July 24, 2023, Title VI grievance establish that the grievance was rejected as inappropriate [Doc. 7-1 pp. 53–57]. And the applicable grievance procedure provided in relevant part that when an inmate appealed a finding that his grievance was inappropriate, the Assistant Commissioner of Prisons had twenty-five days to make a determination as to that appeal [Doc. 28-3 p. 9]. But

---

Doc. 28-3 p. 8], the apparently improper classification of the grievance as untimely is irrelevant considering this finding.

Additionally, the rejection of this grievance as inappropriate also explains Defendants' apparent lack of records for the grievance, as the applicable grievance procedure provides that such grievances "shall be returned to the inmate with instructions as to proper completion [] . . . [and] should not be logged as received (which starts the deadline times running) until the corrected version is received" [Doc. 28-2 p. 4].

15

Plaintiff commenced this action by filing his complaint herein on August 1, 2023 [Doc. 7 p. 53],[5] which is only seven days after the earliest date on which he could have appealed the finding that his grievance was inappropriate. At the time Plaintiff filed his complaint in this action, Assistant Commissioner of Prisons still had eighteen days to respond to Plaintiff's alleged appeal of the finding that his grievance was inappropriate under the applicable policy [Doc. 28-3 p. 9]. Thus, it is apparent that, instead of waiting until he knew whether the Assistant Commissioner of Prisons would allow Plaintiff's July 24, 2023, Title VI grievance to proceed at the end of the twenty-five days, Plaintiff abandoned the alleged appeal of that grievance and filed this action instead. As such, Plaintiff's complaint was premature and filed before he had exhausted his available administrative remedies. *Hartsfield*, 199 F.3d at 309 ("[A]n inmate cannot simply . . . abandon the [grievance] process before completion and claim that he has exhausted his remedies or that it is futile for him to do so . . . ." (citation omitted)).

In sum, the undisputed evidence in the record establishes that Plaintiff failed to exhaust his available administrative remedies for his excessive force claims proceeding herein prior to filing this action and Defendants have met their burden to show that no reasonable jury could find that Plaintiff exhausted his available administrative remedies prior to filing this action. The Court will therefore **GRANT** Defendants' motions for summary judgment [Docs. 26, 41].

---

[5] While Defendants appear to assume that Plaintiff commenced this action by filing his motions regarding deadlines on July 24, 2023 [Docs. 1, 2], these documents were only motions, and Rule 3 of the Federal Rules of Civil Procedure provide that "[a] civil action is commenced by filing a complaint with the court." Thus, as Plaintiff signed his complaint on August 1, 2023 [Doc. 7 p. 53], the Court finds that this is the day on which Plaintiff commenced this action [*See supra* footnote 3].

V.   CONCLUSION

For the reasons set forth above:

1. Plaintiff's motions to appoint counsel [Docs. 56, 60] are **DENIED**;

2. Plaintiff's motion requesting that the Court provide him with a form that will allow his friends and family to pay the balance of his filing fee [Doc. 61] is **GRANTED** to the extent that the Clerk is **DIRECTED** to send a copy of this memorandum and order to the Court's financial officer, who is **DIRECTED** to send Plaintiff (1) the balance of his filing fee for this action and (2) any guidance that may exist as to how Plaintiff's friends and family may pay that balance, including any form that may exist;

3. Plaintiff's discovery motions [Docs. 62–66] are **DENIED** and Defendants' discovery motion [Doc. 67] is **DENIED as moot;**

4. Defendants' motions for summary judgment [Docs. 26, 41] will be **GRANTED**, and this action will be **DISMISSED without prejudice**; and

5. the Court **CERTIFIES** that any appeal from this decision would not be taken in good faith, so it will **DENY** Plaintiff leave to proceed *in forma pauperis* on any subsequent appeal.

**SO ORDERED. AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

ENTER:

*/s/ Jill E. McCook*
Jill E. McCook
United States Magistrate Judge